# In the United States Court of Federal Claims

No. 20-412

(Filed: 23 August 2023)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| MAKETA S. JOLLY, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

**HOLTE, Judge.**

This Opinion and Order constitutes the Court's third attempt to discern jurisdiction over plaintiff's tax refund claims. Plaintiff first filed a petition to the United States Tax Court on 17 September 2019 regarding her 2016 through 2018 tax returns. The Tax Court dismissed plaintiff's claims in March 2020 finding it lacked subject-matter jurisdiction and the statute of limitations had run. In April 2020, plaintiff filed a complaint in this court seeking $5,680.00 for tax years 2016 through 2019. The government filed a motion to dismiss in December 2020. In a May 2021 order denying the government's Motion to Dismiss, two material factual disputes stemming from the IRS's inability to locate plaintiff's 2017 administrative file prevented the Court from determining whether plaintiff fully paid the tax liabilities: (1) the existence of a 2017 notice of deficiency; and (2) plaintiff's receipt of a $6,863.00 2017 tax refund. In April 2022, the government changed argument to conclude the IRS followed regulatory procedure when it did not issue a 2017 notice of deficiency and, in September 2022, the government confirmed plaintiff received a $6,863.00 refund for tax year 2017. In March 2023, the Court ordered plaintiff to identify: (1) how the receipt of the $6,863.00 refund does not change or negate plaintiff's claim she fully paid the 2017 tax liabilities; and (2) what specific monies the government still owes plaintiff and what money-mandating law is invoked if plaintiff continues the original claims. After full briefing from the parties, for the reasons discussed below the Court finds it now lacks jurisdiction over plaintiff's claims regarding tax years 2016 through 2019 and must therefore dismiss this case pursuant to Rules 12(h)(3) and 12(b)(6) of the Rules of the Court of Federal Claims.

## I.    Background

On 6 April 2020, plaintiff filed a complaint seeking individual income tax returns totaling $5,680.00 for tax years 2016 through 2019.  Compl. at ¶ 4, ECF No. 1.  The factual record presented by the parties at the time of the Court's 3 March 2023 Order considering the government's Motion for Reconsideration summarizes:

> Ms. Jolly timely filed her individual income tax returns for 2016 and received the requested refund of $2,392.00 on 23 February 2017.  In 2018, Ms. Jolly filed an amended tax return for 2016.  The IRS audited Ms. Jolly's tax record and issued a notice of deficiency on 8 April 2019, resulting in a $1,965.00 increase in Ms. Jolly's 2016 tax liability.  The notice advised Ms. Jolly the deadline to petition the Tax Court regarding the adjustments was 8 July 2019.  Ms. Jolly did not pay the amount she allegedly owed for 2016, which was assessed to be $2,184.81 as of 5 October 2020.

> Ms. Jolly timely filed her tax return for 2017 and received the requested refund of $6,863.00 on 14 March 2018.  In 2018, Ms. Jolly filed an amended tax return for 2017.  According to the government, on 9 July 2018, the IRS assessed a total of $6,371.16 in Ms. Jolly's tax liability.  The government could not locate any notice of deficiency the IRS issued to Ms. Jolly for the assessment of her 2017 tax liability.

> On 17 September 2019, Ms. Jolly filed a petition with the United States Tax Court regarding tax years 2016 through 2018.  The Tax Court dismissed Ms. Jolly's 2016 claim, as Ms. Jolly failed to timely file the petition within 90 days of receiving the 2016 notice of deficiency.  The Tax Court also dismissed Ms. Jolly's 2017 and 2018 claims for lack of jurisdiction, because "the jurisdiction of the [Tax] Court depends, in part, on the issuance by the Commissioner of a valid notice of deficiency to the taxpayer," yet "no notice of deficiency was issued to petitioner for tax years 2017 and 2018. . . ."

> Ms. Jolly timely filed her tax returns for 2018 and 2019.  For both years, the IRS applied Ms. Jolly's tax refund to her 2017 balance ($1,947.00 and $1,255.00, respectively).  Ms. Jolly's total amount of additional taxes due for 2017, after the application of refund credits from 2018 and 2019, was assessed to be $2,069.20 as of 5 October 2020, which Ms. Jolly did not pay.

3 Mar. 2023 Order at 2, ECF No. 51 (quoting 20 May 2021 Order at 2–3, ECF No. 18) (internal citations omitted).  The Court denied the government's Motion to Dismiss in its 20 May 2021 Order because two material factual disputes, both dispositive of jurisdiction, arose:

> First, the parties disputed whether the IRS had issued a notice of deficiency to plaintiff for the 2017 tax year.  Plaintiff argued a notice of deficiency had not been issued when one was required for the assessed 2017 deficiency.  The government countered the notice was "missing," but presumably existed, so the deficiency assessment was valid.  If a notice of deficiency had not been validly issued when a notice was required, then the liability assessed in the notice of deficiency would be void, and plaintiff would have been paid in full.  If plaintiff was paid in full, this

court has jurisdiction.  Plaintiff would have been paid in full for the 2017 tax year because the $6,298.00 deficiency would not be treated as a liability on plaintiff's account given that a required notice of deficiency was never issued by the IRS.

Second, the parties disputed whether the IRS had issued the $6,863.00 refund from plaintiff's initial 2017 tax return filing.  Plaintiff argued she never received the $6,863.00 refund from her initial 2017 tax return filing. The government maintained plaintiff received the $6,863.00 refund.  Prior to 20 May 2021, the government had not yet obtained plaintiff's 2017 IRS administrative file, nor had the government conducted the trace on the $6,863.00 refund to confirm plaintiff's receipt.  If the 2017 refund of $6,863.00 had never been issued to plaintiff, the calculations from the 2018 and 2019 refunds credited against the 2016 deficiency show plaintiff was paid in full and owed a refund.

*Id.* at 2–3 (internal citations omitted); 20 May 2021 Order at 8.  The factual record preceding the 3 March 2023 Order continues:

On 17 June 2021, the government filed a motion for reconsideration of the 20 May 2021 Order denying the government's motion to dismiss.  To aid in the Court's consideration of the motion for reconsideration, the Court ordered supplemental briefing from the parties regarding the existence of a 2017 notice of deficiency and the *Flora* full payment rule.[1] On 5 August 2021, the government filed its opening supplemental brief. Plaintiff responded on 3 September 2021, and the government replied on 15 September 2021.  The parties then convened for a status conference on 18 November 2021.  Plaintiff, originally *pro se*, obtained representation on 3 January 2022, and the parties filed a joint status report providing for plaintiff's further supplemental briefing on 28 January 2022.  Plaintiff filed supplemental briefing on the government's motion for reconsideration on 15 March 2022.

The parties convened for a second status conference on 30 June 2022.  "During the status conference, plaintiff disputed she received a $6,863.00 tax refund payment the government contends it paid her on 14 March 2018."  On 30 June 2022, the Court ordered this case "stayed while the government and plaintiff collaborate to conduct a tax refund trace."  Subsequently, on 30 September 2022, "the IRS provided the results of a refund trace showing" $6,863.00 was indeed deposited 14 March 2018.  Plaintiff later stipulated to the receipt of the $6,863.00 refund from her initial 2017 tax return on 14 October 2022 in a status report, as confirmed by the trace conducted by the government.

---

[1] The Full Payment Rule is a jurisdictional rule requiring plaintiffs to pay in full the contested tax amount before filing suit in this court.  3 Mar. 2023 Order at 8, ECF No. 51 (citing *Flora v. United States*, 362 U.S. 145, 177 (1960)).

On 26 October 2022, after the parties confirmed issuance and receipt of the $6,863.00 refund, the Court lifted the stay, agreed to plaintiff's request to file supplemental briefing on the government's motion for reconsideration, and the government's request to file a response to plaintiff.  In accord with the order, the government submitted its supplemental briefing on 6 December 2022, while plaintiff waived filing any supplemental briefing in a status report filed on 7 December 2022.  The parties convened for a third status conference on 11 January 2023.  Following this status conference, on 12 January 2023, the Court ordered: (1) the parties confer with regards to the effect of the confirmed and undisputed $6,863.00 on plaintiff's claims and the government's motion for reconsideration; and (2) plaintiff file a supplemental statement to provide any updates to the position of her claims.  Plaintiff filed a status report on 1 February 2023 broadly alleging "further monies and damages" without any specific detail.

3 Mar. 2023 Order at 4–5 (internal citations omitted).  In its Order, the Court first considered whether it should grant the government's Motion for Reconsideration.  *Id.* at 5.  Ultimately, the Court denied the government's Motion for Reconsideration because the facts needed to resolve each material factual dispute "could have been discovered by the exercise of due diligence prior to the May 2021 Order."  *Id.* at 7 (citing *Girault v. United States*, 133 Ct. Cl. 135, 140 (1955)).  Additionally, the Court "did not (1) patently misunderstand a party, (2) make a decision outside of the adversarial issues presented by the parties, or (3) err in apprehension."  *Id.* at 6 (citing *Del. Valley Floral Grp. v. Shaw Rose Nets, LLC.*, 597 F.3d 1374, 1384 (quoting *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 477 (S.D. Fla. 2002))) (internal quotations omitted).

The Court concluded its 3 March 2023 Order by considering whether plaintiff had alleged facts to sustain a claim and jurisdiction.  3 Mar. 2023 Order at 7.  Having facts sufficient to determine plaintiff owes $2,069.20 in tax liability, the Court ordered plaintiff to:  "(1) identify how the confirmed and undisputed receipt of the $6,863.00 refund does not change or negate the nature of her argument she fully paid her 2017 tax liabilities; and (2) identify what specific monies are owed to plaintiff and what money-mandating law is being invoked if plaintiff is continuing her original claims."  *Id.* at 8.

On 6 April 2023, plaintiff filed a status report responding to the Court's 3 March 2023 Order.  6 Apr. 2023 Status Report, ECF No. 52.  The parties submitted a joint status report on 20 April 2023.  20 Apr. 2023 Joint Status Report, ECF No. 54.

## II.   Parties' Arguments Regarding Whether the Court Retains Jurisdiction

### A.   Plaintiff's Argument

In the 11 January 2023 Status Conference and 6 April 2023 Status Report, plaintiff conceded as follows:  (1) the parties stipulating to the $6,863.00 refund receipt may moot the

overpayment claim for 2017; and (2) based on associated mathematical calculations, the Court may not have jurisdiction.  *See* 11 Jan. 2023 Status Conference; 6 Apr. 2023 Status Report. Nonetheless, plaintiff argues she fully paid the liabilities for tax years 2016 and 2017.  *See* 6 Apr. 2023 Status Report.  For the 2016 claim, plaintiff re-asserts the original argument from the complaint, claiming the government owes $616.00 in overpayments because plaintiff paid $2,392.00 when she owed only $1,776.00.  *Id.* at 2.  Plaintiff attached a Form 1040X from the 2016 tax returns as evidence substantiating the tax refund claims for 2016.  6 Apr. 2023 Status Report Ex. 2 at 1 (2016 Form 1040X) [hereinafter Pl.'s Ex. 2].  Plaintiff concludes the government owes "a significantly greater amount of money" and outlines this claim in Exhibit One to the 6 April 2023 Status Report.  6 Apr. 2023 Status Report Ex. 1 at 1–2 (Pl.'s Personal Tax Return Calculations) [hereinafter Pl.'s Ex. 1].

Exhibit One documents plaintiff's position regarding the 2017 through 2019 tax returns but makes no mention of an amount the government owes for tax year 2016.  Pl.'s Ex. 1 (Pl.'s Personal Tax Return Calculations).  The Exhibit summarizes the claims for tax years 2017 through 2019.  *Id.*  Specifically, for tax year 2017, plaintiff alleges the government owes a "return of an estimated $6,300.00" the government refused plaintiff "through regulatory process[es]."  *Id.* at 1.  For tax year 2018, plaintiff claims the government wrongfully applied a $3,167.00 refund to the 2016 tax liability.  *Id.*  Plaintiff makes a similar argument for tax year 2019, claiming the government wrongfully applied $1,255.00 to the 2016 tax liability.  *Id.* at 2. Plaintiff neither includes calculations to justify the claims nor explains why the claims for tax years 2017 and 2018 differ from the original claims stated in the complaint.  *Id.*; *see also* Compl. at ¶ 4.  Plaintiff also does not clarify why plaintiff states the IRS applied the 2018 and 2019 tax refunds to the 2016 tax liability, when the record indicates the IRS applied those refunds to plaintiff's 2017 tax liability.  *Compare* Pl.'s Ex. 1 at 1–2 (stating the IRS applied plaintiff's 2018 and 2019 tax refunds to the 2016 liability) *with* 3 Mar. 2023 Order at 8 (citing Gov't's Resp. to Pl.'s Suppl. Br. at 12–15) (stating the IRS applied plaintiff's 2018 and 2019 tax refunds to the 2017 liability); 20 Apr. 2023 JSR at 2 n.1 (acknowledging the discrepancy in plaintiff's briefing and the record).  The Court assumes plaintiff intended to argue the IRS wrongfully applied the 2018 and 2019 tax refunds to the outstanding 2017 tax liability because, contrary to plaintiff's argument, the IRS never applied the 2018 and 2019 tax refunds to her 2016 liability.[2]  RCFC 52(a)(1) ("the court must find the facts specially . . .").

Exhibit One also includes new claims from tax years 2020 and 2021.  Pl.'s Ex. 1 at 2 (Pl.'s Personal Tax Return Calculations).  For tax year 2020, plaintiff argues the government wrongfully applied the $6,996.00 refund to the 2016 tax liability.  Pl.'s Ex. 1 at 2 (Pl.'s Personal Tax Return Calculations).  For tax year 2021, plaintiff contends the government wrongfully applied the $4,000.00 refund to the 2016 tax liability.  *Id.*  Again, plaintiff neither offers calculations substantiating the claims regarding tax years 2020 and 2021 nor justifies the

---

[2] Confusion may arise surrounding the IRS's decision not to apply plaintiff's 2018 and 2019 tax refunds to the 2016 liability before transferring any remaining funds to the 2017 tax liability.  *See* Gov't's MTD at 3.  Two independent reasons precluded the IRS from applying plaintiff's 2018 and 2019 tax refunds to the 2016 tax liability.  *See* Gov't's MTD at 4; *infra* Table 1 (Tax Filing Timeline) (providing a chronological timeline of relevant tax filings and IRS actions).  First, the IRS applied plaintiff's 2018 tax refund to the 2017 tax liability because the IRS had not yet issued a notice of deficiency for plaintiff's 2016 tax returns.  *See infra* Table 1 (Tax Filing Timeline).  Second, the IRS applied plaintiff's 2019 tax returns to plaintiff's 2017 tax liability because of the ongoing Tax Court litigation surrounding the 2016 tax return.  *Id.*

addition of the 2020 and 2021 tax refund claims pursuant to Rule 15(a)(2) of the Rules of the Court of Federal Claims ("RCFC"). *Id.*

In the 20 April 2023 Joint Status Report, plaintiff "request[ed] an accounting [of] how the tax refund she conceded previously would reduce her claim for Tax Year 2017." 20 Apr. 2023 JSR at 1 (cleaned up). Plaintiff also clarified the "$616 request for a refund in the 1040X would be from the withholding taxes, so if there was a [sic] income tax refund which did not include this amount[, then] there would be jurisdiction under the Tucker Act." *Id.* Plaintiff does not further define "withholding taxes" or where such taxes fit into the IRS calculations determining plaintiff owes a liability of $2,184.81 for tax year 2016. *Id.* Ultimately, plaintiff concludes: (1) she fully paid the tax liabilities; (2) the government owes plaintiff tax refunds from several years; and (3) the Court retains jurisdiction over plaintiff's claims. *See* 6 Apr. 2023 Status Report; 20 Apr. 2023 JSR at 1.[3]

### B.    Government's Argument

The government argues plaintiff failed to show cause as to why the Court has subject-matter jurisdiction over her claims. 20 Apr. 2023 JSR at 3, 4. For plaintiff's 2016 tax refund claim, the government denies plaintiff is entitled to $616.00. *Id.* at 2. The government cites the Court's 20 May 2021 Order holding plaintiff did not pay the tax liability she owed for 2016 after the IRS commenced an audit and issued a notice of deficiency on 8 April 2019. *Id.* at 2 (citing 20 May 2021 Order at 2). Even if plaintiff demonstrated the IRS applied plaintiff's 2020 and 2021 tax refunds to the 2016 tax liability, the government notes plaintiff would still fail to satisfy the Full Payment Rule because "jurisdiction is determined based on facts that exist at the time of the complaint." 20 Apr. 2023 JSR at 2 n.1 (citing *Gaynor v. United States*, 150 Fed. Cl. 519, 530, 534 (2020)); *see infra* Section III.B.

For plaintiff's 2017 tax refund claim, the government references the Court's 3 March 2023 Order concluding plaintiff owes an outstanding 2017 tax liability of $2,069.20 after the IRS applied plaintiff's tax refunds and abatements to the initial $6,298.00 tax liability. 20 Apr. 2023 JSR at 3 (citing 3 Mar. 2023 Order at 8). Given the Court concluded in its 3 March 2023 Order plaintiff still owes an outstanding tax liability from 2017, the government argues the Court lacks subject-matter jurisdiction to hear plaintiff's 2017 tax refund claim pursuant to RCFC 12(h)(3). *Id.* The government also argues plaintiff received the benefits of the 2018 and 2019 tax refunds when the IRS applied the refunds to plaintiff's 2017 tax liability, making the 2018 and 2019 claims moot under RCFC 12(b)(6). *Id.* at 4.

## III.    Applicable Legal Standards

The Tucker Act authorizes this court to hear claims against the United States government when the claim is based in a money-mandating source of law. 28 U.S.C. § 1491(a)(1); *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007). Subject to the Full Payment Rule, the

---

[3] Plaintiff contends the total damages are $11,437.00, which does not equal the sum of the claimed damages from tax years 2016 through 2021. Pl.'s Ex. 1 at 2 (Pl.'s Personal Tax Return Calculations). When added, the sum of plaintiff's claimed damages from tax years 2016 through 2021 is $22,334.00, a difference of $10,897.00. *Id.*

Court of Federal Claims possesses the authority to adjudicate tax refund claims under the Tucker Act.  28 U.S.C. § 1491(a)(1); *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government . . . in the United States Court of Federal Claims."). To satisfy the Full Payment Rule, a prerequisite for this court's jurisdiction, a plaintiff must pay the full amount of the contested taxes (as well as any interest or penalties) before initiating a tax refund suit.  *Diversified Grp., Inc. v. United States*, 841 F.3d 975, 981 (Fed. Cir. 2016) ("In *Flora*, the Supreme Court determined that [Section] 1346(a)'s jurisdictional grant includes a 'full payment requirement,' which demands—as a jurisdictional prerequisite—full payment of the tax or penalty before a party could sue for a refund.") (citing *Flora v. United States*, 362 U.S. 145, 177 (1960)); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Thomas v. United States*, 56 Fed. Cl. 112, 115–16 (2003)); *see also Shore v. United States*, 9 F.3d 1524, 1527–28 (Fed. Cir. 1993) (the Full Payment Rule does not require prepayment of interest and penalties when the taxpayer only disputes the tax assessment).

Under RCFC 12(h)(3), if a court "determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."  RCFC 12(h)(3).  "A court may and should raise the question of its jurisdiction *sua sponte* at any time it appears in doubt."  *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed. Cir. 1988); *e.g.*, *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992 (Fed. Cir. 2019); *Brady v. United States*, 541 F. App'x 991, 993 (Fed. Cir. 2013).  Under RCFC 12(b)(6), a defendant may seek dismissal of an action for failure to allege facts sufficient to state a plausible claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may dismiss a complaint *sua sponte* for failure to state a claim when additional proceedings would not enable plaintiff to prove entitlement to relief.  *New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed. Cir. 1999) (citing *New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed. Cir. 1997)).  The Court may *sua sponte* dismiss under RCFC 12(b)(6).  *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) (While reversing this court for dismissing *sua sponte* a regulatory takings claim under RCFC 12(b)(6) without an adequate factual basis, the Federal Circuit clarified, "[t]he trial court may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action.") (citing *Myers v. Polk Miller Prods., Inc.*, 201 F.2d 373, 376 (C.C.P.A. 1953)).  This court may dismiss under RCFC 12(b)(6) when "a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought."  *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)) (internal quotations omitted).  Due process is not violated by a dismissal, even *sua sponte*, for failure to state a claim.  *Constant v. United States*, 929 F.2d 654, 657 (Fed. Cir.), *cert. denied*, 501 U.S. 1206 (1991).

## IV.   Analysis

### A.  Plaintiff's 2016 Through 2019 Tax Refund Claims[4]

---

[4] Given the numerous filings and calculations involved in determining whether plaintiff retains a residual tax amount or owes a liability, the Court produced two tables to distill the information:

   Table One:  Tax Filing Timeline (providing a chronological timeline of relevant tax filings and IRS action, 3 Mar. 2023 Order, ECF No. 51).

The 20 May 2021 Order denied the government's Motion to Dismiss because the Court lacked a sufficient factual basis to determine whether plaintiff paid the contested 2017 tax amount in full.  20 May 2021 Order at 7.  The IRS's inability to locate plaintiff's 2017 administrative file left two factual disputes unresolved:  (1) "the existence of any notice of deficiency in 2017 and [(2)] plaintiff's receipt of the initial 2017 refund of $6,863.00."  3 Mar. 2023 Order at 6.  The factual disputes allowed for two possibilities:  (1) "[i]f the 2017 refund of $6,683.00 had never been issued to plaintiff, the calculations from the 2018 and 2019 refunds credited against the 2016 deficiency show plaintiff was paid in full and owed a refund[;]" or (2) "Ms. Jolly's total amount of additional taxes due for 2017, after the application of [two abatements and] refund credits from 2018 and 2019, was assessed to be $2,069.20."  *Id.*  at 2–3, 7 (quoting 20 May 2021 Order at 2–3).

Between the Court's 20 May 2021 Order and its 3 March 2023 Order, the IRS located plaintiff's 2017 administrative file, allowing the government to determine the IRS followed regulatory procedure when it did not issue plaintiff a notice of deficiency for the 2017 tax returns.[5]  3 Mar. 2023 Order at 3 (citing Gov't's Resp. to Pl.'s Suppl. Br. at 7, 13, 15–17, ECF No. 37); 30 Jun. 2022 Order at 1, ECF No. 39.[6]  With plaintiff's 2017 administrative file located, the Court possessed facts sufficient to conclude the IRS followed regulatory procedure when it did not issue plaintiff a 2017 notice of deficiency.[7]  3 Mar. 2023 Order at 3 ("If a notice of

---

Table Two:  Plaintiff's 2017 Tax Liability (listing the IRS calculations behind plaintiff's outstanding 2017 tax liability following the application of two abatements and plaintiff's 2018 and 2019 tax refunds, Gov't's MTD, ECF No. 12).

[5] In its 8 July 2021 Order, the Court noted:

In its motion to dismiss plaintiff's petition in the Tax Court, the government represented "no notice of deficiency was issued to petitioner for tax years 2017 and 2018, nor has respondent made any other determination with respect to tax years 2016 through 2018 that would confer jurisdiction on the Court."  In the government's briefs before this Court, the government represented the [IRS] issued a notice of deficiency for the 2017 assessment. . . . In dismissing plaintiff's 17 September 2019 petition, the Tax Court found "[t]he record . . . reflects that no notice of deficiency for tax years 2017 and 2018 nor any notice of determination was issued to petitioner for tax years 2016 through 2018 that would confer jurisdiction upon [the tax court]."  The government represented to this Court the IRS issued a notice of deficiency for 2017.

8 Jul. 2021 Order at 1–2, ECF No. 21 (internal citations omitted).  After the Court's May 2021 denial of the government's Motion to Dismiss, the government located the IRS's 2017 administrative file for plaintiff, which allowed the Court to conclude the IRS followed regulatory procedure when it did not issue a 2017 notice of deficiency.  *Compare* 20 May 2021 Order at 6 *with* 3 Mar. 2023 Order at 3 (citing Gov't's Resp. to Pl.'s Suppl. Br. at 7, 15–17, ECF No. 37).

[6] The government cites to Internal Revenue Manual ("IRM") Sections 4.9.8.2 and 4.9.8.3 in its Response to Plaintiff's Supplemental Brief when addressing why plaintiff's 2017 tax returns do not require a notice of deficiency.  Gov't's Resp. to Pl.'s Supp. Br. at 15, ECF No. 37.  Chapter Nine of Part Four of the IRM addresses the technical time reporting system involved in tax examination, not notice of deficiencies.  *See* I.R.M. § 4.9.1.  Therefore, the Court presumes the government intended to cite IRM Sections 4.8.9.2 and 4.8.9.3, the two sections addressing when the IRS must issue a notice of deficiency.  I.R.M. §§ 4.8.9.2–3.

[7] The IRS followed regulatory procedure when it did not issue a notice of deficiency for plaintiff's 2017 tax liability because plaintiff self-reported the initial $6,298.00 liability.  Gov't's Resp. to Pl.'s Suppl. Br. at 15–17 (citing I.R.C. § 4.8.9.2; I.R.C. §§ 6201, 6203, 6212); App. Gov't's Resp. to Pl.'s Suppl. Br. at 2, 16, ECF No. 37-1.  The Internal Revenue Code ("IRC") requires the IRS to issue a notice of deficiency when the taxpayer disagrees with an

deficiency had not been validly issued when a notice was required, then the liability assessed in the notice of deficiency would be void, and plaintiff would have been paid in full."). Therefore, the Court could exclude the IRS's failure to issue a notice of deficiency as a possibility relieving plaintiff of the 2017 tax liability. *Id.*; *Welch v. United States*, 678 F.3d 1371, 1376, 1382–83 (Fed. Cir. 2012) ("If the IRS fails to properly assess the tax, the taxpayer is relieved of the obligation to pay the tax.") (citing I.R.C. §§ 6501(c)(4)(A), 6213(a), 6401(a)). In addition, the results of the IRS's trace of plaintiff's $6,863.00 refund from 2017 allowed the parties to determine, and subsequently stipulate, plaintiff received the refund on 14 March 2018. 30 Sept. 2022 JSR at 1; 14 Oct. 2022 JSR. The Court accordingly concluded plaintiff did not have a residual $1,017.19; plaintiff instead has a $2,069.20 liability, which was one of two possibilities before the Court in 2021. 20 May 2021 Order at 3 ("Ms. Jolly's total amount of additional taxes due for 2017, after the application of refund credits from 2018 and 2019, was assessed to be $2,069.20 as of 5 October 2020, which Ms. Jolly did not pay.").

With both factual disputes resolved, the Court has a complete and undisputed record represented by the following timeline:

| Table 1:  Tax Filing Timeline | |
|---|---|
| *Date* | *Action* |
| 23 February 2017 | The IRS granted plaintiff's 2016 tax refund request of $2,392.00 |
| 5 March 2018 | Plaintiff filed an amended 2017 tax return seeking an additional refund of $1,862.00 |
| 14 March 2018 | The IRS granted plaintiff's original 2017 tax refund request of $6,863.00 (plaintiff received the requested $6,863.00 refund on 14 March 2018) |
| 11 June 2018 | Plaintiff filed an amended return for 2016 asserting an additional $616.00 refund |
| 9 July 2018 | The IRS assessed a total of $6,371.76, including $73.76 in interest, for plaintiff's 2017 tax liability because plaintiff should have only received a $565.00 refund |
| 25 March 2019 | The IRS applied plaintiff's 2018 tax refund of $1,947.00 to the 2017 liability |
| 8 April 2019 | The IRS issued a notice of deficiency indicating an increase of $1,956.00 in tax liability for 2016 |
| 19 August 2019 | The IRS assessed adjustments, concluding plaintiff owes $1,983.24 tax liability for 2016 |
| 9 September 2019 | Plaintiff petitioned the Tax Court to contest the 2016 Notice of Deficiency |

---

additional assessment from the IRS. *See* I.R.C. § 6212(a); I.R.M. § 4.8.9.2 (IRC Section "6212 . . . require[s] that the [IRS] issue a notice of deficiency before assessing additional income tax . . . unless the taxpayer agrees to the additional assessment."). When tax liabilities originate from self-reported sources, the IRS assesses them under IRC Section 6203, rather than the IRC Section 6212 deficiency procedures, because no dispute over the increased liability exists. Gov't's Resp. to Pl.'s Suppl. Br. at 15–17 (citing I.R.M. § 4.8.9.2; I.R.C. §§ 6201, 6203, 6212). Plaintiff's 2017 amended tax return indicates she owes $6,298.00. App. Gov't's Resp. to Pl.'s Suppl. Br. at 3. Therefore, plaintiff self-reported her 2017 tax liability, meaning no dispute exists over the additional assessment, so the IRS did not need to send a notice of deficiency. I.R.M. § 4.8.9.2 (citing I.R.C. § 6212).

| 2 March 2020 | The IRS applied plaintiff's 2019 tax refund of $1,255.00 to the 2017 liability |
| 20 March 2020 | The Tax Court dismissed plaintiff's petition for failure to meet the statute of limitations and lack of subject-matter jurisdiction |
| 5 October 2020 | After the IRS applied two abatements, totaling $1,947.00, and tax credits from 2018 and 2019 to plaintiff's 2017 liability, the IRS determined plaintiff owed $2,069.20 in tax liability for 2017 |
| 5 October 2020 | Plaintiff's 2016 tax liability increased to $2,184.81 due to interest and unassessed penalties of $201.57 |

*See* 3 Mar. 2023 Order at 1–5.  The following table, based on the complete record from plaintiff's 2017 administrative file, lists calculations summarizing plaintiff's 2017 tax liability in three stages:  (1) the initial 2017 tax liability; (2) the tax liability after the IRS applied two abatements and plaintiff's 2018 and 2019 tax refunds; and (3) plaintiff's ultimate 2017 tax liability as disputed by the parties in the Court's 20 May 2021 Order:

| Table 2: Plaintiff's 2017 Tax Liability | |
|---|---|
| Part One | $6,863.00 (initial refund) – $565.00 (correct refund) = $6,298.00 (Initial Liability) + $73.76 (interest) = $6,371.76 Modified Initial Tax Liability |
| Part Two | $6,371.76 – $614.00 (first abatement) – $1,333.00 (second abatement) – $1,947.00 (2018 refund) – $1,255.00 (2019 refund) = $1,222.76 Tax Liability Following Tax Credit Reduction |
| Part Three | $1,222.76 + $846.44 (unassessed penalties and interest) = $2,069.20 Final Tax Liability (as of the last IRS update on 5 October 2020) |

*See id.*  The parties' stipulation of plaintiff's $6,863.00 refund receipt confirms plaintiff owes $2,069.20 in 2017 tax liability, 14 Oct. 2022 JSR, a possibility before the Court in its 20 May 2021 Order, 20 May 2021 Order at 3.  Therefore, plaintiff failed to pay the contested 2017 tax liability in full, and the Court does not have jurisdiction over the claims.  3 Mar. 2023 Order at 8 ("With an outstanding balance, plaintiff is not paid in full, and this court does not have jurisdiction.") (citing *Flora v. United States*, 362 U.S. 145, 177 (1960)); *Diversified Grp., Inc. v. United States*, 841 F.3d 975, 981 (Fed. Cir. 2016) ("In *Flora*, the Supreme Court determined that [Section] 1346(a)'s jurisdictional grant includes a full payment requirement, which demands—as a jurisdictional prerequisite—full payment of the tax or penalty before a party could sue for a refund.") (internal quotations and citations removed)).

Further, as shown in the second row of Table Two, plaintiff received the benefits of the 2018 and 2019 tax refunds when the IRS applied both to the 2017 liability.  *Supra* Table 2 ("Plaintiff's 2017 Tax Liability").  The complete record confirms plaintiff received the benefits of the refunds when the IRS credited plaintiff's 2018 and 2019 tax refunds to reduce the outstanding 2017 liability to $2,069.20, meaning plaintiff failed to state a claim related to her 2018 and 2019 tax refunds upon which the Court may grant relief.  *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) ("The trial court may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action.") (citing

*Myers v. Polk Miller Prods., Inc.*, 201 F.2d 373, 376 (C.C.P.A. 1953)); *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) ("The Court of Federal Claims may properly grant a motion to dismiss under RCFC 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought.") (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)) (internal quotations omitted).

### B.  Whether Plaintiff Demonstrated She Paid in Full to Sustain Jurisdiction Based on Recent IRS Records

In its 3 March 2023 Order, the Court ordered plaintiff to show cause as to how the Court retains subject-matter jurisdiction over plaintiff's claim given:  (1) the IRS's 2017 administrative file demonstrating the IRS followed regulatory procedure when it did not issue a 2017 notice of deficiency; and (2) the parties' stipulation of plaintiff's $6,863.00 refund receipt.  3 Mar. 2023 Order at 8.  Plaintiff responded in the 6 April 2023 Status Report, but only restates the amounts plaintiff argues the IRS owes her for tax years 2016 through 2019.  6 Apr. 2023 Status Report at 1; Pl.'s Ex. 2 (2016 Form 1040X).  In addition, plaintiff added new claims for tax years 2020 and 2021.  *Id.*  Plaintiff's argument fails to address:  (1) the factual record's indicating  the IRS followed regulatory procedure when it did not issue a 2017 notice of deficiency; (2) the stipulated $6,863.00 refund receipt; and (3) the subsequent $2,069.20 liability.  6 Apr. 2023 Status Report.  Plaintiff fails to demonstrate she fully paid the 2016 and 2017 tax liabilities, and the Court therefore lacks jurisdiction pursuant to the Full Payment Rule.  *See id.*; *Diversified Grp.*, 841 F.3d at 981 (citing *Flora*, 362 U.S. at 177).

While plaintiff did pay her 2018 and 2019 taxes in full, she states no claim upon which relief can be granted because she did not fully pay her initial $6,298.00 liability from 2017.  3 Mar. 2023 Order at 8.  The IRS followed regulatory procedure when it applied her 2018 and 2019 refunds ($1,947.00 and $1,255.00, respectively) to reduce the 2017 liability to $2,069.20.  *Id.*; 20 Apr. 2023 JSR at 3.  Therefore, since plaintiff failed to "allege facts that show [she] is entitled to the legal remedy sought[,]" the Court dismisses plaintiff's 2018 and 2019 claims pursuant to RCFC 12(b)(6).  *Steffen*, 995 F.3d at 1379 ("The Court of Federal Claims may properly grant a motion to dismiss under RCFC 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought.") (citing *Lindsey*, 295 F.3d at 1257); *Anaheim Gardens*, 444 F.3d at 1315 ("The trial court may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action.").

Plaintiff's 2020 and 2021 tax refund claims appear for the first time in the 6 April 2023 Status Report.  *See* 6 Apr. 2023 Status Report.  "It is generally improper for a party to raise new claims not included in its complaint in opposition to a motion to dismiss."  *Driessen v. United States*, 116 Fed. Cl. 33, 44 n.10 (2014) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).  Plaintiff did not seek leave to add the 2020 and 2021 tax refund claims to the complaint.  *See* 6 Apr. 2023 Status Report; 20 Apr. 2023 JSR at 1.  Plaintiff failed to follow the procedure to amend the complaint as established by RCFC 15(a)(2).  Even if plaintiff followed RCFC 15(a)(2), and notwithstanding this court's liberal discretion to grant leave to amend, the

Court concludes adding claims from tax years 2020 and 2021 is futile because these claims depend upon plaintiff's 2016 and 2017 claims, neither of which overcomes the jurisdictional barrier posed by the Full Payment Rule.  *See Kemin Foods, L.C. v. United States*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006) ("An amendment is futile if it would not survive an RCFC 12(b)(6) motion to dismiss.").  The Court therefore determines plaintiff's 2020 and 2021 tax refund claims would not survive an RCFC 12(b)(6) motion to dismiss.  *Id.*  Accordingly, the Court declines to consider plaintiff's 2020 and 2021 tax refund claims.

## V.     CONCLUSION

For the foregoing reasons, plaintiff failed to establish the Court retains subject-matter jurisdiction to decide the 2016 and 2017 tax refund claims pursuant to the Full Payment Rule and RCFC 12(h)(3), which requires a plaintiff to pay the entire contested tax amount before filing a refund suit.  In addition, plaintiff failed to state a claim for which the Court may grant relief regarding tax years 2018 and 2019 pursuant to RCFC 12(b)(6) because plaintiff received the benefits of those refunds when the IRS applied them to plaintiff's 2017 tax liability.  Accordingly, the Court **DISMISSES** plaintiff's complaint pursuant to RCFC 12(b)(6) and 12(h)(3).  The Clerk is **DIRECTED** to enter judgment dismissing plaintiff's complaint.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge